UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LOUIS E. SERRANO III

   Plaintiff,

 v.

ANTHONY DIPERNA, et al.,

   Defendants.

24-CV-483-LJV
ORDER

---

   The pro se plaintiff, Louis E. Serrano III, was a prisoner confined at the Monroe County Jail when he filed this action. He asserts claims under 42 U.S.C. § 1983 related to his criminal proceedings pending in New York State Supreme Court, Monroe County. Docket Item 1. He also has moved to proceed in forma pauperis ("IFP")—that is, as a person who should have the prepayment of the ordinary filing fee waived because he cannot afford it.[1]  Docket Item 4.

   Because Serrano meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization and certification, Docket Item 4, the Court grants his motion to proceed in forma pauperis. Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court screens the complaint. For the reasons that follow, some of Serrano's claims are dismissed under sections 1915(e)(2)(B) and 1915A, and the

---

[1] Serrano initially filed his complaint without paying the required fees or moving to proceed IFP. So on May 23, 2024, this Court ordered the case administratively terminated and informed Serrano that if he wished to reopen the action, he was required either to pay the fees or submit a properly supported IFP motion. Docket Item 2. Serrano then timely moved to proceed IFP. Docket Item 4.

remaining claims will be dismissed under those same sections unless he files an amended complaint correcting the deficiencies addressed below.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the complaint (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

Generally, the court will afford a pro se plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A pro se complaint is to be read liberally. Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (italics omitted) (quoting *Gomez*, 171 F.3d at 795)). But leave to amend pleadings may be denied when any amendment would be "futile." *Cuoco*, 222 F.3d at 112.

2

**I.      SCREENING THE COMPLAINT**

In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even a pro se complaint "must plead 'enough facts to state a claim to relief that is plausible on its face,'" *Shibeshi v. City of New York*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In other words, although a pro se complaint need not provide every last detail in support of a claim, it must allege some facts that support the claim.  *See id.* (concluding that district court properly dismissed pro se complaint under section 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*).  And even pro se pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004), and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

Serrano has sued New York State Supreme Court Justice Charles A. Schiano Jr. and Monroe County Assistant District Attorney Anthony DiPerna[2] for violating his Fifth, Eighth, and Fourteenth Amendment rights, including his right to a speedy trial and to be free from cruel and unusual punishment.[3]  Docket Item 1 at 1-3.[4]  A liberal reading of the complaint tells the following story.

Sometime around March 2022, Serrano was "false[ly] accus[ed]" of a crime, and criminal proceedings were initiated against him in New York State Supreme Court, Monroe County.  *See id.* at 2, 7.  The case has been prosecuted, at least in part, by DiPerna and presided over by Justice Schiano.[5]  *See id.* at 1-2, 4-5.  And the two men have acted "in c[a]hoots" to "malicious[ly] pros[e]cut[e]" Serrano and deny his right to "due process" and a "speedy trial."  *Id.* at 4.

---

[2] Serrano's complaint incorrectly fails to capitalize the third letter of DiPerna's last name.  *See* Docket Item 1 at 1.

[3] Serrano refers to "Judge" Schiano and does not clearly identify the court in which the latter sits.  *See* Docket Item 1 at 2.  This Court nonetheless takes judicial notice of Justice Schiano's official title and position.  *See Blair v. Iliou*, 2024 WL 1532257, at *2 n.2 (E.D.N.Y. Apr. 8, 2024) (taking judicial notice of judge's official title).

[4] Page numbers in docket citations refer to ECF pagination.  Throughout this order, some capitalization has been omitted when quoting from the complaint.

[5] Serrano gives very few details about his criminal prosecution; indeed, while he says that the events that give rise to his claims occurred on March 30, 2022, it is unclear whether he refers to the date when charges were filed, when one of the court proceedings at issue took place, or some other date.  *See* Docket Item 1 at 3-7.  Somewhat similarly, Serrano seems to suggest that prosecutors other than DiPerna also were involved in his case, but he does not say who they were or what they did.  *Id.* at 4; *see generally id.*  The exact timeline—and the identities and precise actions of the prosecutors involved—are irrelevant to this Court's analysis, however.  Indeed, for the reasons that follow, none of the allegations related to any prosecutor survive prosecutorial immunity, at least as currently pleaded.  *See supra* Section II.B.2.b.

More specifically, Serrano was incarcerated for more than six months before the prosecutor even obtained an indictment against him. *Id.* at 4. For that reason, he should have been released upon the expiration of "the [six-]month time period,"[6] but the District Attorney's office "m[a]nipulated the court time[]lines by repeatedly switching [district attorneys]." *Id.* Moreover, Justice Schiano repeatedly allowed the prosecution to "postpon[e]" the criminal proceedings while "ignor[ing Serrano's] motions" seeking to vindicate his rights. *Id.* at 4-5, 7. In fact, Serrano says, Justice Schiano had previously sentenced him to probation and thus is "bias[ed]" against him. *Id.* at 4. So Serrano remains detained at Monroe County Jail pending trial. *Id.* at 5 (indicating that Serrano is a "[p]retrial detainee").

Serrano asks "to be relieved of th[e] false accusation" against him and to be released from incarceration. *Id.* at 7. He also seeks $376,800 in damages. *Id.* at 6.

## II. SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983

---

[6] Under section 30.30 of New York State's Criminal Procedure Law, a defendant may move to dismiss the charges against him if "the [government is] not ready for trial within . . . six months of the commencement of a criminal action" in which at least one of the charges is a felony. *See* N.Y. Crim Proc. Law § 30.30(1); *see also Murphy v. Lynn*, 118 F.3d 938, 942 (2d Cir. 1997) ("Under New York's speedy[ ]trial statute, the prosecution [i]s required to be ready for trial within six months after the filing of the first accusatory instrument [charging the defendant with a felony]."). This Court assumes that Serrano's argument that he should have been released is grounded in that statute.

5

itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

### A.   Claims for Dismissal of Charges and Release from Custody

This Court first considers Serrano's request for an order dismissing the charges against him and releasing him from detention. *See id.* at 7. "Th[e Supreme Court] has held that a prisoner in state custody cannot use a [section] 1983 action to challenge 'the fact or duration of his confinement.'" *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)); *see Hickman v. McDonnell*, 2024 WL 4635462, at *2 (S.D.N.Y. Oct. 28, 2024) (explaining that plaintiff could not "seek[] release from his pretrial incarceration [or the] dismissal of the [state] charges against him" in a "civil rights action" under section 1983). Instead, individuals seeking to challenge their state detention "must seek federal habeas corpus relief (or appropriate state relief)." *Wilkinson*, 544 U.S. at 78. "For those individuals who have yet to be sentenced, a petition brought under 28 U.S.C. § 2241 is the proper vehicle for challenging the constitutionality of pretrial detention." *Slade v. United States*, 2024 WL 3797383, at *4 (S.D.N.Y. Aug. 6, 2024).

Serrano thus cannot seek release or the dismissal of the charges against him in this section 1983 action. *See Hickman*, 2024 WL 4635462, at *2. Further, because Serrano alleges no "facts suggesting that he has exhausted his state court remedies," as is required to seek federal habeas relief, this Court "declines to recharacterize [his] allegations . . . as a [habeas] petition" under section 2241. *See Slade*, 2024 WL 3797383, at *5. Therefore, insofar as Serrano seeks his release and the dismissal of

6

the state charges against him, his claims are dismissed. And because amendment of those claims—at least in this section 1983 action—would be "futile," those claims are dismissed without leave to amend.[7] *Cuoco*, 222 F.3d at 112.

### B.     Damage Claims

Section 1983 suits can be brought against government officials in both their official and individual capacities. As the Second Circuit has explained, "[i]n an official capacity suit, 'the real party in interest is the governmental entity and not the named official.'" *Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) (alteration omitted) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)), *aff'd*, 592 U.S. 43 (2020). "By contrast, individual capacity suits 'seek to impose individual liability upon [] government officer[s] for actions under color of law.'" *Id.* (alterations omitted) (quoting *Hafer*, 502 U.S. at 25).

Here, Serrano sues Justice Schiano and Assistant District Attorney DiPerna in only their official capacities. *See* Docket Item 1 at 2. But in light of its obligation to construe pro se pleadings "liberally," *see Cuoco*, 222 F.3d at 112—and because, for the reasons explained below, Serrano's official capacity claims are barred by sovereign immunity—the Court construes his complaint as asserting claims against the defendants in both their official and individual capacities.

---

[7] If Serrano's current custody continues—and once he has exhausted his state court remedies—"he may return to federal court" to "file a petition for a writ of habeas corpus in the appropriate venue." *See Slade*, 2024 WL 3797383, at *5 (italics omitted). Serrano is advised, however, that section 2241 provides "a narrow window for a state detainee to challenge his pretrial detention" and "cannot be used to 'permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court.'" *Burns v. Valhalla*, 2023 WL 7301394, at *2 (S.D.N.Y. Nov. 6, 2023) (quoting *Braden v. 30th Jud. Cir. Ct.*, 410 U.S. 484, 493 (1973)), *appeal dismissed* No. 24-1364 (2d Cir. Sept. 11, 2024).

### 1.     **Official Capacity Claims**

"The Eleventh Amendment bars damage[] actions in federal court against a state and against state officials acting in their official capacities, unless the state waives sovereign immunity or Congress abrogates it." *Chris H. v. New York*, 740 F. App'x 740, 741 (2d Cir. 2018) (summary order). "New York has not waived its sovereign immunity in federal court for actions seeking damages" under section 1983, "[n]or has Congress abrogated [it]." *Id.* (first citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39-40 (2d Cir. 1977); and then citing *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)); *see also Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005) (explaining that "[n]either a [s]tate nor its officials acting in their official capacities are 'persons' under [section] 1983" (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989))).

In this case, the Eleventh Amendment bars Serrano's official capacity claims for damages against both defendants. First, because a state court justice clearly is a state official, Serrano cannot seek damages from Justice Schiano in his official capacity. *See Curto v. Siwek*, 2007 WL 9777896, at *3 (W.D.N.Y. Feb. 12, 2007) (Eleventh Amendment prohibited plaintiff from suing New York State Supreme Court justice for damages in her official capacity), *aff'd*, 322 F. App'x 62 (2d Cir. 2009) (summary order). And second, while DiPerna is a Monroe County assistant district attorney, he is deemed to be an agent of the state in matters like this one.

"Whether a defendant is a state or local official depends on whether the defendant represented a state or a local government entity when engaged in the events at issue." *Huminski*, 396 F.3d at 70 (citing *McMillian v. Monroe County*, 520 U.S. 781, 785-86 (1997)). "It is well established that New York prosecutors act on behalf of the

state, not the county in which they serve, when prosecuting a criminal matter." *See Schnitter v. City of Rochester*, 556 F. App'x 5, 9 n.4 (2d Cir. 2014) (summary order) (citing *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)). "Thus, if . . . an assistant district attorney acts as a prosecutor, []he is an agent of the [s]tate, and therefore immune from suit in h[is] official capacity."[8] *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order).

Serrano's claims against DiPerna relate solely to DiPerna's role in prosecuting Serrano's criminal case. *See* Docket Item 1; *see also infra* Section II.B.2.b. Thus, with respect to all of Serrano's claims against DiPerna in his official capacity, DiPerna was acting as an "agent of the state" and is immune from any damage claim. *See D'Alessandro*, 713 F. App'x at 8.

In sum, because Serrano's damage claims against Justice Schiano and Assistant District Attorney DiPerna in their official capacities are barred by sovereign immunity, those claims are subject to dismissal. And because "better pleading w[ould] not cure" that defect, they are dismissed without leave to amend. *Cuoco*, 222 F.3d at 112.

### 2.  Individual Capacity Claims

Unlike official capacity claims, individual capacity claims for damages against state officials are not barred by the Eleventh Amendment. Nonetheless, for the reasons

---

[8] In contrast, if a suit "centers 'on the administration of the district attorney's office'—that is, on the 'office policy' that the district attorney sets—then the district attorney is 'considered a municipal policymaker,' and the Eleventh Amendment does not immunize [that official] from suit." *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order) (quoting *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)). But Serrano's complaint includes no such claims: It alleges only that the prosecutors involved in his criminal case violated his rights in the course of those proceedings. *See* Docket Item 1; *see also infra* Section II.B.2.b.

explained below, immunity of a different sort—judicial or prosecutorial immunity—bars Serrano's individual capacity claims as pleaded.

          a.     *Judicial Immunity*

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009). This is to ensure "that a judicial officer, in exercising the authority vested in [that judge], shall be free to act upon [the judge's] own convictions, without apprehension of personal consequences." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). Judicial immunity therefore does not give way even to "allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

Judicial "immunity is overcome in only two sets of circumstances." *Id.* "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Id.* (citations and italics omitted). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 12 (citations omitted).

Here, Serrano's claims relate to Justice Schiano's alleged conduct and decisions while presiding over Serrano's state prosecution. *See* Docket Item 1. Serrano says that Justice Schiano violated his constitutional rights by granting the government's motions for adjournments while ignoring Serrano's motions. *Id.* at 4-5, 7. And he says that Justice Schiano was "bias[ed]" against him because the justice had sentenced him in a previous case, implicitly asserting that Justice Schiano violated Serrano's rights by failing to recuse himself. *See id.* at 4, 7.

"The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven*, 579 F.3d

10

at 210.  Further, courts have held that judges' decisions on motions—even motions to recuse—are indisputably judicial in nature.  *See Buhannic v. Friedman*, 2019 WL 481732, at *5 (S.D.N.Y. Feb. 7, 2019) (ruling on motions is a "quintessential judicial act[]"); *Moskovits v. Bank of Am. N.A.*, 2021 WL 230193, at *4 (S.D.N.Y. Jan. 20, 2021) ("[A] judge's decision to recuse or not to recuse himself is itself a judicial act protected by immunity." (citing *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 714 (S.D.N.Y. 2011))).  And the fact that Serrano says Justice Schiano's conduct deprived him of his speedy trial rights—or any other rights—does not make that conduct any less judicial.  *See Coombs v. United States*, 2021 WL 2453496, at *2-3 (S.D.N.Y. June 15, 2021) (judge's issuance of orders excluding time under federal Speedy Trial Act during Covid-19 pandemic, which plaintiff said deprived him of his speedy trial rights, were judicial acts protected by judicial immunity).

Serrano's allegations that Justice Schiano has conspired with prosecutors and is "bias[ed]" against him, *see* Docket Item 1 at 4-5, 7, do not change this analysis.  For one thing, his claims are largely conclusory:  Serrano says that Justice Schiano acted "in c[a]hoots" with the prosecutors to violate his rights, but he does not provide any facts to support this claim other than Justice Schiano's apparently granting the government's motions while "ignor[ing]" Serrano's.[9]  *See id.* at 4-5.  Such conduct clearly is "judicial" and thus protected by absolute judicial immunity.  *Bobrowsky*, 777 F. Supp. 2d at 715 (holding that judge's "rulings[, even though] adverse to plaintiff, [we]re the very essence

---

[9] Serrano also says that Justice Schiano had sentenced him to probation in a previous case.  *See* Docket Item 1 at 4.  But he does not explain why that shows that the judge is "biased":  Indeed, judges frequently hear cases involving defendants who may have appeared before them previously.

11

of 'judicial functions' and [could ]not, therefore, be the basis for liability" (citation omitted)). And even "[m]ore fundamentally, since absolute immunity spares [judges] any scrutiny of [their] motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." *See Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987).

Serrano does allege that Justice Schiano "lack[ed] jurisdiction" to allow the government to continue to prosecute the case against him "after the [six-]month time period . . . allot[t]ed" the government "to bring forth indictment" had elapsed. *See* Docket Item 1 at 4. But that does not mean that Justice Schiano acted "in the complete absence of all jurisdiction." *See Mireles*, 502 U.S. at 12. As the Supreme Court has explained, there is a difference between a judge who acts in "excess of jurisdiction" and one who acts in "the clear absence of all jurisdiction over the subject[ ]matter." *Stump v. Sparkman*, 435 U.S. 349, 356-57, 356 n.6 (1978) (quoting *Bradley*, 435 U.S. at 351-52). Only in the second situation is the judge "deprived of [judicial] immunity." *Id.* at 356-57. In *Stump*, the Court provided an example to illustrate the point:

> If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.* at 357 n.7 (citing *Bradley*, 435 U.S. at 352).

Here, Serrano asserts constitutional violations based on a state criminal case. Docket Item 1. The New York State Supreme Court—which is a court of "general jurisdiction"—certainly has jurisdiction over such cases. *See Muka v. Murphy*, 358 F.

12

App'x 239, 240 (2d Cir. 2009) (summary order); *Bramble v. Hynes*, 2024 WL 4309231, at \*1, \*5 (E.D.N.Y. Sept. 26, 2024) (New York State Supreme Court justices did not act in "the clear absence of all jurisdiction" in presiding over plaintiff's criminal proceedings). Indeed, Serrano does not say that Justice Schiano erred in exercising jurisdiction over the case in the first place; rather, he says that the justice erred in not dismissing it based on the government's delay. *See* Docket Item 1 at 4-5, 7. In other words, his allegations—at most—suggest that Justice Schiano exceeded his jurisdiction or exercised his authority "error[neously]" or "maliciously." *See Stump*, 435 U.S. at 356. And such allegations do not overcome judicial immunity. *See id.*

Serrano's damage claims against Justice Schiano in his individual capacity therefore are subject to dismissal because of absolute judicial immunity. And because "better pleading w[ould] not cure" that defect, those claims are dismissed without leave to amend. *Cuoco*, 222 F.3d at 112.

### b.   Prosecutorial Immunity

Like judges, prosecutors are absolutely immune from suit, and that immunity "appl[ies] with full force" to activities that are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Prosecutorial immunity

> encompasses not only [prosecutors'] conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution, activities in deciding not to do so, and conduct of plea bargaining negotiations.

*Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986) (internal citations omitted); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 72 (2d Cir. 2019) (holding that prosecutors had absolute immunity for acts that "constituted an exercise of their

13

prosecutorial discretion in preparing a case for indictment and deciding when, where, and how to prosecute").

But that immunity does not include "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Warney v. Monroe County*, 587 F.3d 113, 121 (2d Cir. 2009) (quoting *Imbler*, 424 U.S. at 430-31). Likewise, a prosecutor who "proceeds in the clear absence of all jurisdiction" is not shielded by immunity. *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (quoting *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987)). "The relevant question, therefore, is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor." *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012). "If the generic acts are within those functions, absolute immunity applies to protect the prosecutor even in the face of a complaint's allegations of malicious or corrupt intent behind the acts." *Id.*

Serrano says that DiPerna violated his rights by conspiring with the judge to seek "postpon[e]ments," thus violating Serrano's right to a speedy trial. Docket Item 1 at 4. He further asserts that the District Attorney's office "m[a]nipulated . . . court time[]lines by repeatedly switching [district attorneys]." *Id.*

Such conduct is "closely associated with the conduct of litigation or potential litigation." *See Barrett*, 798 F.2d at 571-72; *see also Gadreault v. Bent*, 2022 WL 943669, at *6 (D. Vt. Mar. 3, 2022) (holding that prosecutors were immune from suit for "[a]ny actions that they allegedly undertook in connection with [plaintiff's] prosecution—including their alleged delay of [his] trial—[because those actions were] within the ambit of their prosecutorial duties"), *report and recommendation adopted*, 2022 WL 910927

14

(D. Vt. Mar. 29, 2022). Absolute prosecutorial immunity therefore applies with "full force" here. *See Imbler*, 424 U.S. at 430.

Serrano also argues that the defendants' deprivation of his speedy trial rights divested the District Attorney's office of jurisdiction to prosecute him. Docket Item 1 at 4. But that does not mean that DiPerna (or any prosecutor) acted "in the clear absence of all jurisdiction" so as to defeat prosecutorial immunity. *See Schmueli*, 424 F.3d at 237. As the Second Circuit has explained, "[i]n considering whether a given prosecution was clearly beyond the scope of th[e prosecutor's] jurisdiction," courts "inquire whether the pertinent statutes may have authorized prosecution for the charged conduct." *Id.* Serrano does not allege facts suggesting that no statute authorizes prosecution for the crime with which he was charged; instead, he asserts that the prosecution has been conducted in a way that violates his rights. *See* Docket Item 1. Such allegations do not overcome prosecutorial immunity*,* and Serrano's conclusory allegations that DiPerna conspired with Justice Schiano do not change the calculus.[10] *See Schmueli*, 424 F.3d at 237-38 (noting that prosecutorial immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy"); *see also supra* Section II.B.2.a.

For those reasons, Serrano's claims against DiPerna, as asserted in the complaint, are subject to dismissal. But in light of Serrano's pro se status, *see Tracy v.*

---

[10] Serrano does say—without providing any additional details—that the "accusation" against him is "false." Docket Item 1 at 7. But he does not say that the law he was accused of violating does not exist or does not authorize criminal charges. *See id.* And claims that an assistant district attorney maliciously prosecuted a defendant despite knowing he was innocent do not overcome prosecutorial immunity. *See Shmueli*, 424 F.3d at 238-39.

15

*Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), the Court grants him leave to amend his complaint to assert a section 1983 claim that challenges DiPerna's or some other prosecutor's actions as an administrator or investigative officer, *see Warney*, 587 F.3d at 121, or that otherwise survives prosecutorial immunity.

### 3. Claims against Serrano's Defense Attorney

Serrano names only Justice Schiano and Assistant District Attorney DiPerna as defendants. Docket Item 1 at 1-2. But he also alleges that his defense attorney "is not doing his job." *Id.* at 10.

Criminal defense attorneys—whether public defenders, court-appointed attorneys, or privately retained counsel—are not persons acting under color of state law "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *O'Donoghue v. Soc. Sec. Admin.*, 828 F. App'x 784, 787 (2d Cir. 2020) (summary order) ("Private attorneys are generally not state actors for purposes of [section] 1983." (citation and internal quotation marks omitted)); *Murdock v. Legal Aid Soc'y*, 2015 WL 94245, at *2 (E.D.N.Y. Jan. 6, 2015) ("It is well settled that defense attorneys, even if they are court-appointed or are public defenders, do not act under color of state law when performing traditional functions of counsel."). But defense attorneys do "act 'under color of' state law for [section] 1983 purposes" when they are "willful participant[s] in joint action with the [st]tate or its agents." *See Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (citations omitted); *McCloud v. Jackson*, 4 F. App'x 7, 9-10 (2d Cir. 2001) (summary order) (holding that defense counsel was not liable under section 1983 "because there was no

16

showing that he [conspired or otherwise] worked with state officials to deprive [plaintiff] of federal rights" (citation omitted)).

To the extent that Serrano asserts a claim against his defense attorney, it is only for actions the attorney allegedly took—or failed to take—during his criminal case. *See* Docket Item 1 at 10. Serrano does not allege that his defense attorney worked with Assistant District Attorney DiPerna or any other government official to deprive him of his rights. *See id.* 10. In fact, he says only that the attorney "is not doing his job." *Id.* Serrano therefore has not plausibly alleged that his defense attorney was a state actor.

For those reasons, any claims against Serrano's defense attorney are subject to dismissal. But in light of Serrano's pro se status, *see Tracy*, 623 F.3d at 101-02, he may name his defense attorney as a defendant in any amended complaint and allege facts explaining why that attorney was a state actor with respect to the challenged conduct.

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that Serrano's motion to proceed in forma pauperis, Docket Item 4, is GRANTED; and it is further

ORDERED that Serrano's claims for the dismissal of charges and his release; his official capacity claims; and his individual capacity claims against Justice Schiano are dismissed, and the Clerk of the Court shall terminate Justice Schiano as a defendant to this action; and it is further

ORDERED that Serrano may amend his complaint **within 45 days of the date of this order;** and it is further

ORDERED that the Clerk of the Court shall send to Serrano with this order a copy of the original complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Serrano does not file an amended complaint correcting the deficiencies noted above **within 45 days of the date of this order**, the complaint will be dismissed without further order and the Clerk of the Court shall close the case; and it is further

ORDERED that this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals in forma pauperis is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal in forma pauperis should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that Serrano shall notify the Court in writing if his address changes. The Court may dismiss the action if Serrano fails to do so.

SO ORDERED.

Dated:   December 30, 2024
         Buffalo, New York

      */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE